IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


AMARE JEROME LEWIS                                        PLAINTIFF

VS.                          CIVIL CASE NO. 3:24CV838-CWR-LGI

TYREE JONES                                              DEFENDANT



**TRANSCRIPT OF OMNIBUS HEARING**



BEFORE THE HONORABLE LAKEYSHA GREER ISAAC
UNITED STATES MAGISTRATE JUDGE

OCTOBER 15, 2025
JACKSON, MISSISSIPPI

APPEARANCES:

FOR THE PLAINTIFF:
     AMARE JEROME LEWIS, PRO SE
     #2200002170
     TALLAHATCHIE COUNTY CORRECTIONAL FACILITY
     19351 US HWY 49 N
     TUTWILER, MISSISSIPPI  38963

FOR THE DEFENDANT:
     CHARLES E. COWAN, ESQUIRE
     CHARLES WALTER KIHM, ESQUIRE
     WISE, CARTER, CHILD & CARAWAY, PA
     401 EAST CAPITOL STREET, SUITE 600
     JACKSON, MISSISSIPPI  39201




REPORTED BY:  TERI B. NORTON, RMR, FCRR, RDR
              Mississippi CSR #1906
_____

501 E. COURT ST., STE. 2.500
JACKSON, MISSISSIPPI  39201
(601) 608-4186


**EXHIBIT B**

1    **THE COURT:**  Okay.  We are now on the record in the

2    matter of Amare Jerome Lewis versus Sheriff Tyree Jones, case

3    number 3:24cv838-CWR-LGI.  And before we go forward, we will

4    get everyone's identification for the record.  You, sir,

5    Mr. Lewis.

6    **PLAINTIFF LEWIS:**  My name is Amare Lewis, Amare

7    Jerome Lewis.

8    **THE COURT:**  Okay.  Thank you.  And we will have

9    introductions by counsel for Sheriff Jones.  Mr. Cowan, if you

10   want to introduce yourself and your partner.

11   **MR. COWAN:**  Charles Cowan for Sheriff Jones, and

12   Mr. Charlie Kihm, my colleague here, is with me on the case.

13   **THE COURT:**  All right.  Thank you.

14   So we are here -- and I didn't introduce myself.  I am

15   Judge Isaac.  We are here today to proceed with what we call an

16   omnibus hearing.  Now, Mr. Lewis, have you ever been to an

17   omnibus or screening hearing before?

18   **PLAINTIFF LEWIS:**  No, ma'am.

19   **THE COURT:**  Okay.  So I'm going to explain to you

20   what we're going to do.  We have asked you to join us here

21   today as a result of the lawsuit that you filed, and we are

22   going to go over the entire lawsuit today.

23   So one of the things is that you are proceeding in this

24   case on what is known as IFP status.  That means you are

25   proceeding without payment of costs.  And you requested to

1    proceed that way, and that request was granted.  That does make

2    your case fall under what is known as the Prison Litigation

3    Reform Act, and that requires that the Court screen your case.

4        And one of the things we have to do in screening it is

5    make a determination as to whether you have stated a claim for

6    which relief can be granted, and whether or not your --

7    basically, that's a long way to say we have to make a

8    determination as to whether your case has a basis in fact and a

9    basis in law.  You can sometimes have facts that are absolutely

10   correct, but they don't meet the legal standards that are

11   necessary, and sometimes you might not have enough facts, but

12   the law may be on your side.  But you have to have both in

13   order to proceed.  So that's a big part in what we do in the

14   screening hearings.

15       So in order to screen the case, I consider, first of all,

16   the complaint that you filed.  We do have that.  Sometimes the

17   complaints aren't absolutely crystal clear, and so we like to

18   bring you into open court and give you an opportunity to tell

19   us in your own words what the lawsuit is about, what the

20   defendant has to do with it, and how you believe they may have

21   violated your constitutional rights.

22       So I will listen to what you have to say, I will take that

23   into consideration, along with your complaint, and I will come

24   up with a conclusion as to whether your case, again, has a

25   basis in fact and in law to proceed.  And so -- and during that

1    process, I'm going to ask you some questions, and I will

2    provide an opportunity for the defendants to ask you questions

3    as well, counsel for the defense, on behalf of their client.

4        And so we will also talk about some procedural aspects of

5    your case and some things you may or may not be aware of, but I

6    want to be sure that you hear them from me.  And so because

7    what I'm required to consider from you today is going to be a

8    supplement to your complaint, not an amendment to your

9    complaint but a supplement to what you've said, then what you

10    tell me should be under oath.  So at this time, I'm going to

11    ask you to stand and raise your right hand, please, sir.

12        **(OATH ADMINISTERED.)**

13            **THE COURT:**  Thank you.  The record will reflect that

14    Mr. Lewis has responded affirmatively.

15        So before we go into discussing the facts of your case, I

16    told you we are going to talk about some procedural stuff.  So

17    the first procedural thing I want to talk about is what is

18    known as consent to magistrate judge jurisdiction.

19        So, as I said, I'm Judge Isaac.  I'm the magistrate judge

20    on your case.  Every case in our court does have two judges

21    assigned to it, and so the other judge assigned to your case is

22    District Judge Carlton W. Reeves.  Now, insofar as you are

23    concerned, there's probably not a big difference between who

24    tries your case, and it doesn't really make a difference to us.

25    The same procedure is going to be used in your case whether you

1    proceed with two judges or one judge.  The rules of evidence
2    would be the same.  The right to appeal decisions would be the
3    same.  If we proceed with two judges, as we currently are, then
4    what happens is that I handle your case all the way through
5    pretrial.  I handle motions that are filed in your case.  If
6    there's a motion that's filed that's known as a dispositive
7    motion or one that could decide what ultimately happens in your
8    case, then what I do is write a report and recommendation to
9    Judge Reeves, and he can decide to adopt my recommendation or
10   to make his own recommendations.  So that's the procedure if we
11   keep going with two judges, as we currently have.
12        The other option is you can decide to consent to
13   magistrate judge jurisdiction.  Under that instance, if both
14   parties consent, then I would be the only judge assigned to
15   your case, and instead of making a recommendation, I would just
16   make the rulings outright.  And as I said, there's not a ton of
17   difference between the two.  Perhaps as a practical matter, the
18   biggest different is your case may proceed faster with the
19   magistrate judge because we have more room on our calendar to
20   try cases if your case goes to trial.  But as I said, it really
21   doesn't make us any difference.  The choice belongs to the
22   parties.  We all have plenty of cases and lots of work to do.
23   So you're not going to make me angry if you don't consent, and
24   you aren't going to make Judge Reeves angry if you do.  So it
25   won't adversely affect your case either way.

1          Do you have any questions about what it means to consent

2    to magistrate judge jurisdiction?

3              **PLAINTIFF LEWIS:**  No, ma'am.

4              **THE COURT:**  So at this time, I will ask you,

5    Mr. Lewis, do you consent to magistrate judge jurisdiction in

6    your case, which means I would be the only judge on your case

7    after this?

8              **PLAINTIFF LEWIS:**  Yes, ma'am.

9              **THE COURT:**  Mr. Cowan, do the defendants consent?

10             **MR. COWAN:**  Yes, Your Honor.

11             **THE COURT:**  Okay.  So my pro se law clerk, Ms.

12   Spears, is going to provide you all with a form.  So,

13   Mr. Lewis, that is a form that confirms everything that I just

14   told you, that you do consent to magistrate judge jurisdiction

15   in your case and that I will be the judge handling it.  And so

16   both parties will sign and then Judge Reeves will also need to

17   sign.

18         (All parties sign consent form.)

19             **THE COURT:**  Mr. Lewis, one other procedural thing I

20   want to ask you about before we get into the meat of your case

21   is, are you familiar with the Court's three strikes rule?

22             **PLAINTIFF LEWIS:**  No, ma'am.

23             **THE COURT:**  Okay.  I will explain it to you.  Because

24   you are proceeding, like I said, IFP, without having to pre-pay

25   the costs in your case, there's something called the three

1    strikes rule.  That means if you file -- if you have three

2    cases that you filed under IFP status and it is found that

3    those cases don't state a claim or are frivolous, then you can

4    be prevented from filing any future cases under IFP status

5    unless you are in imminent danger or harm.  So you could still

6    file a case, but you wouldn't be able to file it without having

7    to pay the costs first.  So that's the three strikes policy.

8        Do you understand that policy based on my explanation to

9    you, or do you have questions about it?

10           **PLAINTIFF LEWIS:**  I understand.

11           **THE COURT:**  Okay.  So now that you understand that

12   policy, do you want to proceed today with your case?

13           **PLAINTIFF LEWIS:**  Yes, ma'am.

14           **THE COURT:**  Thank you, sir.

15       All right.  So those are the initial procedural matters.

16   We are going to go now -- I've talked a lot.  We are going to

17   go now into letting you talk about your case, and then we will

18   again, as I told you, I'm going to ask you some questions, and

19   I will allow the defendants to ask you some questions, and then

20   at the end, I'm going to come back and talk about some more

21   procedural matters, about the logistics of the actual case.

22   Okay?

23           **PLAINTIFF LEWIS:**  Yes, ma'am.

24           **THE COURT:**  Now, at any point during this, if you

25   have questions and you don't understand, if you don't

1  understand my question or you don't understand the question

2  from the defendant, then we need you to tell us that.  Tell us

3  you don't understand, and then we will each do our best to

4  phrase it in a way, the question in a way that you do

5  understand it.  Can you agree to do that for me?

6          **PLAINTIFF LEWIS:**  Yes, ma'am.

7          **THE COURT:**  All right.  So we are here today because

8  you have filed a lawsuit against Sheriff Tyree Jones arising

9  out of your detention in the Hinds County Jail in Raymond.  Is

10 that correct, sir?

11         **PLAINTIFF LEWIS:**  Yes, ma'am.

12         **THE COURT:**  All right.  So, of course, I do have your

13 complaint, and I have read it, but as I said, our goal here

14 today is to allow you to tell your story in your own words and

15 tell us what happened.  And so at this time, I'm going to allow

16 you to tell us what happened and why you are suing Sheriff

17 Jones and what you believe that he may have done that violated

18 your rights.  Okay?

19         **PLAINTIFF LEWIS:**  Yes, ma'am.

20         **THE COURT:**  All right.  So I will turn it over to you

21 now.

22         **PLAINTIFF LEWIS:**  I will start by saying October 11th

23 of last year, I was placed on B1.  After I had came from

24 Tallahatchie, I was permanently put in Raymond from

25 Tallahatchie from getting jumped on up there, and they moved me

1    back to Raymond and housed me in Raymond.  And I was down

2    there -- the sergeant, Sergeant Dotson, I told Sergeant Dotson

3    I couldn't be around any inmates -- well, specifically the

4    inmates that was on the zone because they were the same people

5    that jumped on me in Tallahatchie.

6         **THE COURT:**  Can I interrupt you for a second

7    Mr. Lewis, and have you back up for me?  Can you tell me first,

8    what were the dates that you were incarcerated at Hinds County?

9    What dates were you there?  I know there was a period of time

10   you were at Hinds County and a period of time you were at

11   Tallahatchie, so I want to be sure we have the dates correct.

12   Okay?

13        **PLAINTIFF LEWIS:**  I can't say I know the dates, the

14   specific date I was brought back down there.  It was, like -- I

15   think it was like the same night, though.  You are talking

16   about when the events happened or are you saying --

17        **THE COURT:**  Well, I'm talking the total.  Do you know

18   when you first were put in jail at Hinds County?

19        **PLAINTIFF LEWIS:**  For my charges?

20        **THE COURT:**  Yes, sir.

21        **PLAINTIFF LEWIS:**  I think it was in November.

22        **THE COURT:**  Okay.  And would you say the year for the

23   record for us?

24        **PLAINTIFF LEWIS:**  2023.

25        **THE COURT:**  Okay.  And then I understand you are

1   alleging that the incident occurred October 11th, 2024.

2             **PLAINTIFF LEWIS:**  Yes, ma'am.

3             **THE COURT:**  When were you sent to Tallahatchie?

4             **PLAINTIFF LEWIS:**  I was sent to Tallahatchie I think

5   that December -- I think, like, two months after I came to jail

6   from C2, I left from C2 and went to -- I don't know the exact

7   date.

8             **THE COURT:**  So two months after November 2023?

9             **PLAINTIFF LEWIS:**  Yes, ma'am.

10             **THE COURT:**  Okay.  And how long were you at

11   Tallahatchie before you returned to Raymond?

12             **PLAINTIFF LEWIS:**  About six months.

13             **THE COURT:**  So --

14             **PLAINTIFF LEWIS:**  About six -- it was about six

15   months.  I ended up getting with the warden and stuff and

16   getting -- and asking him -- well, I requested to be housed in,

17   like, PC or something, away from population, and they ended up

18   just sending me back to Raymond.

19             **THE COURT:**  Okay.  So why did you make that request

20   to be housed away from the population?

21             **PLAINTIFF LEWIS:**  Because I had -- with that same

22   group of people, I had something going on, and I was trying to

23   separate myself from the crowd so I wouldn't get in no trouble.

24             **THE COURT:**  What group of people are you referring

25   to?

1      **PLAINTIFF LEWIS:**  Some guys, like -- it was an

2  incident a long time ago, and it's like they still -- they

3  still following through with the incident.  Like, every time

4  they see me, it will be the same thing, like.

5      **THE COURT:**  Okay.  And these were fellow inmates?

6      **PLAINTIFF LEWIS:**  Yes, ma'am.

7      **THE COURT:**  So were they at Tallahatchie or at

8  Raymond?  I want to be sure I'm clear.

9      **PLAINTIFF LEWIS:**  They -- when I -- all right.  So I

10  told you that I ended up get housed back in Raymond from

11  Tallahatchie.  So two or three -- about two or three of those

12  inmates that jumped on me, they would end up getting housed

13  down there for court.  Well, we came around the same time, but

14  it was like we were on different zones.  I had got jumped on on

15  another zone, and then Dotson moved me to B1.  He was like -- I

16  was like, can you take me to the County Farm or something, or

17  just sit me on C4 or something?  And he told me I had to get

18  serious injury -- I had to go on every zone and get serious

19  injury for me to get housed anywhere else.  So he housed me on

20  B1.

21      **THE COURT:**  What zone were you on when, as you say,

22  you got jumped on?

23      **PLAINTIFF LEWIS:**  B1.

24      **THE COURT:**  How long was this after you were -- this

25  was after you were returned from Tallahatchie to Raymond?

```
1              PLAINTIFF LEWIS:  Yes, ma'am.

2              THE COURT:  Okay.  How long had you been back when

3     that occurred?

4              PLAINTIFF LEWIS:  I would say about two days, you

5     know, about a day or two.

6              THE COURT:  Okay.  Did you notify anybody about this

7     particular incident?

8              PLAINTIFF LEWIS:  I told them as soon as I came

9     through booking.

10             THE COURT:  Okay.  And you told them that you

11    needed -- we call it a red tag.  What do you call it?

12             PLAINTIFF LEWIS:  Same thing.

13             THE COURT:  So you told somebody you needed a red

14    tag?

15             PLAINTIFF LEWIS:  Yes, ma'am.

16             THE COURT:  Who was that person?

17             PLAINTIFF LEWIS:  Scott, Dotson and Jones.  That was

18    the three that was up there at the time.  I requested to speak

19    to a sergeant or something, and them three came.

20             THE COURT:  Okay.  Tell me about that conversation,

21    what you recall of it.

22             PLAINTIFF LEWIS:  So I ended up, like -- the main

23    person that was talking was Dotson, and in the midst of us

24    talking, he was like -- what I just told you, he was like that

25    I can't be housed nowhere else or sent on C4 or none of that.
```

```
 1    I had to go where he send me to unless I get severely hurt, and
 2    I was telling him that it was most likely a chance I was going
 3    to get hurt, and he still put me on the zone with the same guy.
 4         THE COURT:  Okay.  And then how long were you on that
 5    zone before you got into an altercation with those gentlemen?
 6         PLAINTIFF LEWIS:  About a day or two.
 7         THE COURT:  And what happened?
 8         PLAINTIFF LEWIS:  First, I mean, I was in the cell.
 9    I was chilling.  One person ended up coming in there.  We got
10    into a physical fight, and then from there, the other -- like,
11    when he -- when I got in a fight with him and that was over
12    with, like, I would say, like, two or three minutes later, at
13    least six or seven inmates came on -- like, when I was walking
14    up the steps, six or seven inmates came rushing me and stabbed
15    me and stuff.
16         THE COURT:  Okay.  And this was October -- the
17    October 11th incident?
18         PLAINTIFF LEWIS:  Yes, ma'am.
19         THE COURT:  Okay.  What -- did you recognize any of
20    those persons who --
21         PLAINTIFF LEWIS:  I tried to -- I talked to Taffy,
22    the investigator at the jail.  I talked to her.  She's the
23    investigator at the jail.  I talked to her and I asked could I
24    follow through on pressing charges because I knew, like, she
25    had the roster, and she showed me the roster, and she said that
```

 1    it was on camera what happened, so I could point out the people

 2    that did it to me.  And she said -- she asked me did I want to

 3    follow up and do a charge to record me, like voice, and all

 4    that, but it's hard to know if it went through.  I don't know

 5    what is going on.

 6          **THE COURT:**  Were any of the persons who were involved

 7    in the stabbing a part of the people that you identified when

 8    you came into the system as needing a red tag for those folks?

 9          **PLAINTIFF LEWIS:**  It was mixed with new people and

10    the same people at the same time.  They are friends.

11          **THE COURT:**  Okay.  So I interrupted you because I had

12    some specific questions that I wanted to ask you, but is there

13    more that you want to tell me about the actual stabbing -- you

14    started to tell me --

15          **PLAINTIFF LEWIS:**  I feel like -- I feel like -- I'm

16    not going to lie.  I forgot the amendment, I mean, that was

17    broken, but I know that -- I know for sure that my amendment

18    was broken because it was no guards on posts.  And while I was

19    at -- while I was at the cage, beating on the cage, beating on

20    the window, no police came.  Somebody ended up calling their

21    mother, and then their mother came down there with new people,

22    and that's how I ended up getting off the zone.  And there was

23    like 15 or 20 minutes, I would say about 30 minutes I sat on

24    the zone stabbed up for 30 minutes, and my jumpsuit was full of

25    blood.

```
 1              THE COURT:  What zone were you on when the stabbing
 2   actually happened?
 3              PLAINTIFF LEWIS:  B1.
 4              THE COURT:  B1.  And where were you precisely?  Like,
 5   where exactly --
 6              PLAINTIFF LEWIS:  When the stabbing happened?
 7              THE COURT:  Yes, sir.
 8              PLAINTIFF LEWIS:  I was walking up the steps.
 9              THE COURT:  Walking up the steps to your cell?
10              PLAINTIFF LEWIS:  Yes, ma'am.
11              THE COURT:  Okay.  So I want to talk about -- again,
12   I know I keep going back to this, but I'm trying to figure out
13   your history of dealing with the gentlemen who stabbed you.  So
14   there was a -- from what you've told me today, there was an
15   incident where you were jumped on by these persons and then
16   later stabbed.  Were these the same people?
17              PLAINTIFF LEWIS:  It was a mix -- it was new people
18   and it was the same people.
19              THE COURT:  How long between the jumping on or fight
20   and the stabbing; what period of time between those two
21   incidents?
22              PLAINTIFF LEWIS:  Are you saying the fight that I got
23   into the same night, or are you saying the fight that I got
24   into in Tallahatchie?
25              THE COURT:  Okay.  So let's break it down because I
```

1    thought it was only one fight.  So how many fights were you

2    involved in prior to the stabbing?

3                **PLAINTIFF LEWIS:**  I was -- I was assaulted by at

4    least 25 inmates in Tallahatchie.  That was the first fight.

5                **THE COURT:**  And when did that happen?

6                **PLAINTIFF LEWIS:**  That was, like, a month before.

7    No, that was not.  That was, like, right before -- because I

8    sat in the hole -- after that happened, I sat in the hole,

9    like, on PC, after I requested from the warden.  I sat in the

10   hole for, like, a week or two.  And then I ended up going to

11   Raymond from that incident.  And I would say, like, two nights

12   later, that's when that happened with that incident.  So I

13   can't really tell you a date.  I can't give you no exact date.

14               **THE COURT:**  Okay.  This was all in October -- it was

15   all within a week of each other?

16               **PLAINTIFF LEWIS:**  Same month ranges.

17      (COURT REPORTER CLARIFICATION.)

18               **THE COURT:**  All right.  And I didn't introduce --

19   this is our wonderful court reporter.  She is trying to take

20   down everything that we are saying, and we are also having an

21   audio recording of what we are saying so that we can be sure we

22   get the information accurately.  So at different points, she

23   may ask you to repeat what you said, but it's so we can be sure

24   we have a good record.  Okay?

25               **PLAINTIFF LEWIS:**  Yes, ma'am.

1        **THE COURT:**  Now, you are telling me about -- so I

2    understand a little bit better now.  I didn't realize from what

3    you told me that there were two fights.  So there was a fight

4    in Tallahatchie, from what you've told me, and then you were

5    transferred or sent back to Raymond.  And then there was a

6    fight the night of the stabbing and then the stabbing?

7        **PLAINTIFF LEWIS:**  Yes, ma'am.  All right.  So I got

8    to fighting with one of the guys that jumped on me in

9    Tallahatchie.  I got to fighting with him.  Then, like, when I

10   came out of the cell, when I was going up the steps, I was

11   approached by at least six or seven inmates, and they stabbed

12   me and jumped on me and stuff like that.

13       Well, when they got done, they told me to go sit in the

14   cell, and I sat in the cell, but somebody -- like I had said,

15   somebody ended up calling their parent, and their parent ended

16   up coming down with the newer people.  And that's how I ended

17   up getting off the zone because the police ended up coming.  I

18   sat on the zone like 30 minutes trying to get the police to the

19   cage.  I had somebody go to the cage for me and stuff.

20       **THE COURT:**  I want to be clear here.  Did you inform

21   anyone of your fear of these particular inmates prior to the

22   stabbing?

23       **PLAINTIFF LEWIS:**  Yes, ma'am.

24       **THE COURT:**  And who was that, sir?

25       **PLAINTIFF LEWIS:**  It was Dotson.  It was mainly

1  Dotson.  He was mainly the one talking.  But it was three

2  people.  It was Scott, Dotson and Jones that I told it to, but

3  the person that responded was Dotson.  They said he was in

4  control of where I go, like, what zone I go to.  They said he

5  was the one that was in control.  So I just followed along with

6  what they did.

7         **THE COURT:**  And so past altercations or interactions

8  with these inmates were the fight at Tallahatchie.  What caused

9  that?  What brought that on?

10         **PLAINTIFF LEWIS:**  It was some, like -- okay.  It was

11  some canteen -- it was something dealing with the canteen.

12  And, like, commissary, it was something dealing with the

13  commissary, but it was -- it was something supposed to have

14  been paid.  Say, for instance, I get -- say, for instance, I

15  get a noodle or something from you, I owe you two back when the

16  store come.  So it was something like that dealing with some

17  food, and they just -- I wasn't able to pay them, and they just

18  been ever since like they --

19         **THE COURT:**  And that was 25 people?

20         **PLAINTIFF LEWIS:**  It was 25 people in Tallahatchie.

21  They was all in the hole with me.

22         **THE COURT:**  Are these people part of a gang or

23  something like that?

24         **PLAINTIFF LEWIS:**  Yeah, the people that I owed, they

25  are part of a gang.

1              **THE COURT:**  What gang was it?

2              **PLAINTIFF LEWIS:**  Gangster.

3              **THE COURT:**  Gangster Disciples?

4              **PLAINTIFF LEWIS:**  Yes, ma'am.

5              **THE COURT:**  And to your knowledge, were all the

6     persons involved in that particular attack members of that

7     group?

8              **PLAINTIFF LEWIS:**  I really can't -- I really don't

9     know.  I can't say.

10             **THE COURT:**  Okay.  And it's okay if you -- I

11    understand there's probably some fear involved in talking about

12    this, but it's okay to tell us what happened.  Okay?

13             **PLAINTIFF LEWIS:**  Yes, ma'am.

14             **THE COURT:**  All right.  Now, tell us why you are

15    suing Sheriff Jones.

16             **PLAINTIFF LEWIS:**  Because I did, like, some research,

17    and I talked to some people, and they was like -- like, he --

18    he over the jail, and so, like, at the same time, I didn't know

19    who made the calls at this point.  Like, if he over the jail,

20    then I'm trying to see how is these things still being able to

21    go on around the jail if they are supposed to have

22    everything -- like, everybody's constitutional matters should

23    be seen to --

24         (COURT REPORTER CLARIFICATION.)

25             **PLAINTIFF LEWIS:**  I said that I did some research,

1    and I was told that he was over the jail, so -- and, like, when

2    I talk to my grandma and stuff, she was like, in no way

3    anybody's amendment should be broken or anything like that if

4    somebody is taking full responsibility for this jail.

5              **THE COURT:**  And are you presently claiming that any

6    policies or customs for the jail were violated as it relates to

7    what happened with your stabbing?

8              **PLAINTIFF LEWIS:**  No officer present.

9              **THE COURT:**  All right.  I think at this time,

10   Mr. Lewis, those are all the questions I presently have for

11   you.  I may have some additional ones after the defendants ask

12   you their questions, but for now, those are all the questions

13   that I have.  Thank you for answering my questions.  Okay?

14             **PLAINTIFF LEWIS:**  Yes, ma'am.

15             **THE COURT:**  Mr. Cowan, do you have questions?

16             **MR. COWAN:**  Yes, Your Honor, just a few I would like

17   to go over real quickly.

18             **THE COURT:**  Sure.

19             **MR. COWAN:**  So, Mr. Lewis, my name is Charles Cowan.

20   I represent the sheriff in this case, in this lawsuit you

21   filed.  I just heard you tell the judge that you think that

22   Sheriff Jones had a policy of not having guards in the jail to

23   prevent fights?  Is that basically what you are trying to tell

24   the judge?

25             **PLAINTIFF LEWIS:**  It's not just that.  It's the

1    living conditions and everything.  Like, it's just -- I feel

2    like it's certain stuff that's going on in the jail that's

3    supposed to be prevented and that I know I can speak up for

4    myself and a lot of people.

5            **MR. COWAN:**  Okay.  But if you had to say that the

6    sheriff has a policy that you're saying violates your

7    constitutional rights, what is that policy?

8            **PLAINTIFF LEWIS:**  I would say, first of all, the

9    knife that I was -- the knife that was made, it was made out of

10   a rack, a rusty rack.  And I would say living conditions, first

11   of all.  And second of all, the guards, no guards on posts.

12   There are supposed to be guards on post 24/7.

13           **MR. COWAN:**  Okay.  So on this occasion when this

14   incident happened, you are saying there were no guards on

15   posts?

16           **PLAINTIFF LEWIS:**  Yes, sir.

17           **MR. COWAN:**  Are there guards usually on posts and

18   there were no guards on post when that happened?

19           **PLAINTIFF LEWIS:**  There's guards normally that be in

20   the tower, but during this time, during this incident, no

21   guards were in the tower.

22           **MR. COWAN:**  Do you know why no guards were in the

23   tower on this particular incident?

24           **PLAINTIFF LEWIS:**  No, sir.

25           **MR. COWAN:**  But that's because guards are usually

1    there.  Just they weren't there on this occasion, right?

2             **PLAINTIFF LEWIS:**  Yes, sir.

3             **MR. COWAN:**  So you are not saying that Sheriff Jones

4    should be personally or held individually liable for your

5    claims, right?

6             **PLAINTIFF LEWIS:**  I mean, I feel like -- I feel like

7    he should, like, should be.

8             **MR. COWAN:**  You are saying that he should be held

9    personally liable for what happened to you?

10            **PLAINTIFF LEWIS:**  Yes, sir.

11            **MR. COWAN:**  Okay.  What did he personally do or not

12   do that you think should make him liable for your claims?

13            **PLAINTIFF LEWIS:**  Just dealing with the jail itself,

14   like, stuff that go on around the jail that I know that could

15   be prevented.  I can't say, like -- I can't -- I can't answer

16   your question.

17            **MR. COWAN:**  Well, sir, are you saying -- are you

18   saying that he supervises the guards, and because he supervises

19   them and they weren't doing what they were supposed to do

20   during your fight, that he should be also liable?

21            **PLAINTIFF LEWIS:**  Yes, sir.

22            **MR. COWAN:**  Okay.  I think you explained to Judge

23   Isaac some of the events that led up to this attack you are

24   saying happened on you at the jail.  And you talked about a

25   fight you got in immediately before the fight, which this

1    lawsuit is about, right?

2            **PLAINTIFF LEWIS:**  Yes, sir.

3            **MR. COWAN:**  Who is the person you got in a fight with

4    immediately before you were stabbed?

5            **PLAINTIFF LEWIS:**  I don't know his -- I don't know

6    his government name, but I can say his nickname.

7            **MR. COWAN:**  What is his nickname?

8            **PLAINTIFF LEWIS:**  Little J.

9            **MR. COWAN:**  Little J?

10           **PLAINTIFF LEWIS:**  Yes, sir.

11           **MR. COWAN:**  Okay.  If I said the name Jamarius

12    Henderson, would that ring a bell?

13           **PLAINTIFF LEWIS:**  Yes, sir.

14           **MR. COWAN:**  Is that Jamarius Henderson the one you

15    got in a fight with?

16           **PLAINTIFF LEWIS:**  Yes, sir.

17           **MR. COWAN:**  Is Jamarius -- how soon -- correct me if

18    I am wrong, but before the fight with Jamarius Henderson and --

19    the time between the fight with Jamarius Henderson and you

20    getting stabbed, that happened all pretty quickly, didn't it?

21           **PLAINTIFF LEWIS:**  It happened in the same -- it

22    happened in the same -- okay.  Say, for instance, you get in a

23    fight with somebody, and whoever, like -- if they cool with it,

24    they see that you -- it didn't go how they thought it was going

25    to go, so they pull up on you too, and they do what they do.

1      **MR. COWAN:**  Okay.  But what I'm asking is, the time

2  that elapsed between the two fights, it was a very short period

3  of time?

4      **PLAINTIFF LEWIS:**  Short time.  The same night.

5      **MR. COWAN:**  Same night, but it was actually a matter

6  of minutes between the two fights, right?

7      **PLAINTIFF LEWIS:**  Yes, sir.

8      **MR. COWAN:**  Okay.

9      **PLAINTIFF LEWIS:**  It was put on the news as a

10  one-on-one fight, but, like, they didn't mention that I got

11  stabbed by multiple people.  They just made it seem like -- on

12  the news, they made it seem like I was the one in the wrong or

13  something, like, I was the attacker or something.  Like, but it

14  says that both people were injured, but it don't say how both

15  people were injured.  It just say --

16      **MR. COWAN:**  Did you -- so between those two fights,

17  just a short amount of time elapsed, right?

18      **PLAINTIFF LEWIS:**  Yes, sir.

19      **MR. COWAN:**  So you didn't have time to warn anyone or

20  do anything between those two fights, right?

21      **PLAINTIFF LEWIS:**  No, sir.

22      **MR. COWAN:**  Okay.  Because it happened so quickly is

23  what you are saying?

24      **PLAINTIFF LEWIS:**  Yes, sir, it happened quick.  It

25  went, like -- I understand what you are trying to say, like,

1    react time.  Like, if I knew it was coming, could I go to the

2    cage.  It still wasn't nobody in the tower, so there wouldn't

3    have been no way to get around that.

4            MR. COWAN:  But even had you wanted to, you wouldn't

5    have been able to, right?

6            PLAINTIFF LEWIS:  Wouldn't have been able to.  I

7    would have just been at the cage for no reason.

8            MR. COWAN:  And you are saying that this incident got

9    news coverage; is that right?

10           PLAINTIFF LEWIS:  Yes, sir.

11           MR. COWAN:  Okay.  I would like to hand you a news

12   article.  And Your Honor, I'm happy to provide you a copy too.

13           THE COURT:  Sure.

14           MR. COWAN:  May I approach the bench?

15           THE COURT:  Yes.

16           MR. COWAN:  If I may hand the inmate one.

17           THE COURT:  Yes.

18           MR. COWAN:  It has a small stable that I need to

19   remove.

20           THE COURT:  Oh, yes.  Thank you.

21           MR. COWAN:  And the first page just shows the date --

22   the name of the article and the date of the article.

23   Mr. Lewis, if you would turn to the second page.  Are you able

24   to read and write?

25           PLAINTIFF LEWIS:  Yes, sir.

1    **MR. COWAN:**  Okay.  So I noticed you had written your

2    name and signed it, and it looked very legible to me.  So you

3    don't have any difficulty reading anything, do you?

4          **PLAINTIFF LEWIS:**  No, sir.

5          **MR. COWAN:**  Okay.  And have you ever read the inmate

6    handbook at the detention center?

7          **PLAINTIFF LEWIS:**  No, sir.

8          **MR. COWAN:**  Okay.  But you know that you have access

9    to a copy of it if you wanted to read it?

10         **PLAINTIFF LEWIS:**  Yes, sir.

11         **MR. COWAN:**  So this second page says that, according

12   to the sheriff, and this is the second kind of paragraph here,

13   "Jamarius Henderson, 21, was cut several times after getting in

14   a fight with" -- this cut out, but I think the next sentence

15   says you, Amare Lewis.  Is that the gentleman you got in a

16   fight with?

17         **PLAINTIFF LEWIS:**  Yes, sir.

18         **MR. COWAN:**  And it says, "The 21 year old," referring

19   to Jamarius Henderson, "was taken by AMR to University

20   Mississippi Medical Center for treatment."  Is that right?

21         **PLAINTIFF LEWIS:**  Yes, sir, both of us were

22   transported to the hospital.

23         **MR. COWAN:**  And while that article cut off those few

24   words, it says, "According to the sheriff, Jamarius Henderson,

25   21, was cut several times after getting into a fight with

1    another detainee."  Was that other detainee you?

2              **PLAINTIFF LEWIS:**  Yes, sir.

3              **MR. COWAN:**  So that's the first fight you were

4    talking to me and the judge about, right?

5              **PLAINTIFF LEWIS:**  That's the one-on-one fight that

6    night, that same night.

7              **MR. COWAN:**  Now, it says here Henderson was cut

8    several times.  How was he cut?

9              **PLAINTIFF LEWIS:**  Like, I feel like -- I feel like

10   that it was switched up because I was the only one that got

11   stabbed.  I had to have open surgery on my leg.  I got stab

12   wounds right here.  I was the only one that got stabbed.  He

13   just was knocked out.  He didn't have no stab wounds or

14   nothing.

15             **MR. COWAN:**  Okay.  So he suffered injuries.  It's

16   just this representation that he was cut was not true?

17             **PLAINTIFF LEWIS:**  Yes, sir.

18             **MR. COWAN:**  Okay.  But he was taken to UMMC by

19   ambulance?

20             **PLAINTIFF LEWIS:**  Yes, sir.

21             **MR. COWAN:**  And you said he was knocked out?

22             **PLAINTIFF LEWIS:**  Yes, sir.

23             **MR. COWAN:**  So you knocked him out?

24             **PLAINTIFF LEWIS:**  Yes, sir.

25             **MR. COWAN:**  Okay.  Did he suffer any other injuries

```
 1    other than getting knocked out, to your knowledge?

 2             PLAINTIFF LEWIS:  I don't know.

 3             MR. COWAN:  You don't know what other injuries he

 4    suffered?

 5             PLAINTIFF LEWIS:  No, sir.

 6             MR. COWAN:  Have you seen him since October 11, 2024?

 7             PLAINTIFF LEWIS:  He got out of jail.

 8             MR. COWAN:  He got out of jail?

 9             PLAINTIFF LEWIS:  Yes, sir.

10             MR. COWAN:  Okay.  Now, this says that -- and we

11    already cleared this up, but the other person believed to be in

12    the fight was Amare Lewis, and that is you.  You've already

13    admitted you got into this fight with Jamarius Henderson,

14    right?

15             PLAINTIFF LEWIS:  Yes, sir.

16             MR. COWAN:  Were you ever charged related to that

17    fight at all?

18             PLAINTIFF LEWIS:  No, sir.  I tried to press charges,

19    but -- well, they made me sign the papers for the pressed

20    charges and everything, but I don't think they did what they

21    were supposed to do.

22             MR. COWAN:  Do you know if he pressed charges on you?

23             PLAINTIFF LEWIS:  I don't have no charges be pressed

24    on me because I don't got no new charges.

25             MR. COWAN:  If you turn to the very last page of the
```

1    article, and I just want to make sure this is accurate.  It

2    says, "Meanwhile, Lewis is being charged with armed carjacking,

3    armed robbery, possession of a stolen firearm, and false

4    pretense."  Is that right?

5              **PLAINTIFF LEWIS:**  Yes, sir.

6              **MR. COWAN:**  Are those two separate cases?

7              **PLAINTIFF LEWIS:**  The armed robbery and armed

8    carjacking?

9              **MR. COWAN:**  From the other charges.

10             **PLAINTIFF LEWIS:**  The firearm charge is from, like,

11   three years ago.

12             **MR. COWAN:**  Okay.  But you have two open cases?

13             **PLAINTIFF LEWIS:**  No, they are concurrent.

14             **MR. COWAN:**  Okay.  They have been combined?

15             **PLAINTIFF LEWIS:**  Yes, sir.

16             **MR. COWAN:**  Are those set for trial?

17             **PLAINTIFF LEWIS:**  December 8th.  I went to court the

18   13th.

19             **MR. COWAN:**  So you remain a pretrial detainee?

20             **THE COURT:**  You haven't had a trial yet is the

21   question.  Have you had a trial yet in your case?

22             **PLAINTIFF LEWIS:**  No, ma'am.

23             **THE COURT:**  So you are still awaiting trial?

24             **PLAINTIFF LEWIS:**  Yes, ma'am.

25             **THE COURT:**  Go ahead, Mr. Cowan.

1                 **MR. COWAN:** Was Mr. Henderson specifically in a gang?

2                 **PLAINTIFF LEWIS:** Yes, sir.

3                 **MR. COWAN:** I think you told the judge he was a

4  Gangster Disciple.

5                 **PLAINTIFF LEWIS:** Yes, sir.

6                 **MR. COWAN:** Are you in a gang?

7                 **PLAINTIFF LEWIS:** No, sir.

8                 **MR. COWAN:** You are not in a gang?

9                 **PLAINTIFF LEWIS:** No, sir.

10                 **MR. COWAN:** What did -- how did your beef with

11  Mr. Henderson originate?

12                 **PLAINTIFF LEWIS:** Over the commissary.

13                 **MR. COWAN:** It was over commissary?

14                 **PLAINTIFF LEWIS:** Yes, sir.

15                 **MR. COWAN:** But did that originate in Tallahatchie or

16  did that originate --

17                 **PLAINTIFF LEWIS:** It originated in Tallahatchie when

18  I was on G13.

19                 **MR. COWAN:** Okay. When you came back to Hinds County

20  Detention Center, he just happened to be there already?

21                 **PLAINTIFF LEWIS:** He had court.

22                 **MR. COWAN:** Okay. But what I'm asking is, who got

23  there first in October?

24                 **PLAINTIFF LEWIS:** He was already on the zone, and I

25  ended up coming on the zone.

1        **MR. COWAN:**  So you had a prior beef with him over

2   commissary from Tallahatchie?

3        **PLAINTIFF LEWIS:**  Yes, sir.

4        **MR. COWAN:**  Any other aspect of that dispute that you

5   think is important?

6        **PLAINTIFF LEWIS:**  No, sir.

7        **MR. COWAN:**  So we have a list of a whole -- dozens of

8   grievances that you've filed while at Hinds County Detention

9   Center; is that right?

10        **PLAINTIFF LEWIS:**  Yes, sir.

11        **MR. COWAN:**  So you are aware of the grievance process

12   and how it works?

13        **PLAINTIFF LEWIS:**  Yes, sir.

14        **MR. COWAN:**  And you've been aware of that process

15   from the time you first arrived at Hinds County Detention

16   Center?

17        **PLAINTIFF LEWIS:**  Yes, sir.

18        **MR. COWAN:**  And you are at Hinds County Detention

19   Center right now, correct?

20        **PLAINTIFF LEWIS:**  I'm housed in Tallahatchie again.

21        **MR. COWAN:**  Okay.  So they sent you back to

22   Tallahatchie?

23        **PLAINTIFF LEWIS:**  Yes, sir.

24        **MR. COWAN:**  Why did they do that?

25        **PLAINTIFF LEWIS:**  Because of this lawsuit.

1        **MR. COWAN:**  Okay.  So the detention center -- excuse

2   me.  The jail thought it wasn't safe for you to remain at Hinds

3   County Detention Center, and they sent you back to

4   Tallahatchie, right?

5        **PLAINTIFF LEWIS:**  No.  They still had me on the zone

6   when I -- before I got shipped off, I was on the zone for,

7   like, six or seven months.  I was on the same zone.  Ain't had

8   no problem, though, but it's like -- it's like once I put in

9   the motion for the lawsuit, it's like they -- it's like they

10  heard of me and got me out of Raymond.  That's how I feel.

11       **MR. COWAN:**  So you are saying that they sent you to

12  Tallahatchie because you sued them?

13       **PLAINTIFF LEWIS:**  Yes, sir.  That's how I feel --

14       **MR. COWAN:**  I understand that's --

15       **PLAINTIFF LEWIS:**  That's what it looked like.

16       **THE COURT:**  Y'all, both of you, you are talking over

17  each another, which makes it very, very difficult for our court

18  reporter and for me to follow the conversation.  So I'm going

19  to ask you all to let each other completely -- let Mr. Cowan

20  ask his question completely, and then, Mr. Cowan, let Mr. Lewis

21  give his complete answer.  Thank you, gentlemen.

22       **MR. COWAN:**  But you don't have any evidence of that,

23  right?

24       **PLAINTIFF LEWIS:**  No, sir.

25       **MR. COWAN:**  Did you ever file a grievance about this

1    attack?

2            **PLAINTIFF LEWIS:**  No, sir.  I talked to the sergeant

3    and guard person.

4            **MR. COWAN:**  About the fact the attack happened?

5            **PLAINTIFF LEWIS:**  You talking about, like, when I

6    got -- before I got sent back to Tallahatchie, or are you

7    saying --

8            **MR. COWAN:**  I'm saying at any point in time, did you

9    ever file a grievance about this assault on you?

10           **PLAINTIFF LEWIS:**  Not to my memory.

11           **MR. COWAN:**  All right.  And before the assault

12   happened, did you ever file a grievance alerting the county

13   that there was a threat of harm to you by other inmates?

14           **PLAINTIFF LEWIS:**  No, sir.

15           **MR. COWAN:**  And you're aware at the county, at the

16   jail, there is a process for, using the word Judge Isaac

17   described or used, getting red tagged, you are aware there is a

18   process for getting red tagged, right?

19           **PLAINTIFF LEWIS:**  Yes, sir.

20           **MR. COWAN:**  Okay.  And you know that you can submit a

21   grievance that describes a credible threat to your safety, and

22   the jail officials can respond to that, right?

23           **PLAINTIFF LEWIS:**  Yes, sir.

24           **MR. COWAN:**  Are the grievances submitted via a kiosk?

25           **PLAINTIFF LEWIS:**  It's a kiosk on the zone we be

34

1    submitting our grievance form.

2            **MR. COWAN:**  So when you have an issue, you just

3    submit a grievance on the kiosk, right?

4            **PLAINTIFF LEWIS:**  Yes, sir.  But around that time

5    that I got stabbed on B1, the kiosk machine wasn't working.

6    That kiosk machine was down, and they had just fixed them up in

7    December, I think.

8            **MR. COWAN:**  So while the kiosk was down, did they

9    have any other process in place for submitting a grievance?

10           **PLAINTIFF LEWIS:**  Can you repeat that?

11           **MR. COWAN:**  Did they have any other process in place

12   where you could submit a grievance?

13           **PLAINTIFF LEWIS:**  No, sir.

14           **MR. COWAN:**  Okay.  Now, we have grievances in your

15   file from October of 2024.  Did you know that?

16           **PLAINTIFF LEWIS:**  No, sir.

17           **MR. COWAN:**  Okay.  So if you submitted grievances in

18   October 2024, it's safe to say you could have submitted

19   grievances about the incident.  Right?

20           **PLAINTIFF LEWIS:**  Yes, sir.

21           **MR. COWAN:**  And the kiosk is -- after the incident

22   happened, the kiosk was working again, right?

23           **PLAINTIFF LEWIS:**  I would say when I had came back,

24   around December.

25           **MR. COWAN:**  And that was before you filed this

1    lawsuit?

2    **PLAINTIFF LEWIS:**  Yes, sir.

3    **MR. COWAN:**  I think that's all I have, Your Honor.

4    **THE COURT:**  Okay.  Thank you so much.

5    Mr. Lewis, I failed to ask you earlier, were there any

6    type of RVRs or violations that were issued against you as it

7    relates to either of the incidents that you've described today?

8    **PLAINTIFF LEWIS:**  Write-ups?

9    **THE COURT:**  Yes, sir.

10    **PLAINTIFF LEWIS:**  No, ma'am.

11    **THE COURT:**  Okay.  All right.  And I did not get --

12    you started to go into it a little bit during your examination

13    with Mr. Cowan, but what injuries are you claiming that you

14    sustained?  I know you said you had multiple stab wounds.  How

15    many and where?

16    **PLAINTIFF LEWIS:**  I had seven or eight stab wounds.

17    I got three on my side, two right here.  I had to have open

18    surgery on my leg.  I got a long stab wound on my kneecap where

19    it was open surgery on my kneecap.  And I got stab wounds on

20    the back of my legs and stuff.

21    **THE COURT:**  All right.  And what relief are you

22    requesting from Sheriff Jones?  What is it that you want to

23    achieve out of this lawsuit?

24    **PLAINTIFF LEWIS:**  I just want -- I just want -- I

25    just want the jail to be ran right if I'm fixing to be housed

1    in it.  If I'm fixing to be housed, like, in -- I just want it

2    to be ran right.

3            **THE COURT:**  Are you asking for any monetary relief?

4    I do have your complaint.  I'm just asking you here in this

5    proceeding.

6            **PLAINTIFF LEWIS:**  What's monetary relief?

7            **THE COURT:**  Are you asking for any money?

8            **PLAINTIFF LEWIS:**  Not really.

9            **THE COURT:**  Okay.  All right.  Mr. Cowan, do you have

10   any additional questions as a result of the questions that I've

11   asked Mr. Lewis?

12           **MR. COWAN:**  Yes, just one or two, Your Honor.  Have

13   you been told that you'll be returning to Hinds County

14   Detention Center at any point in the future?

15           **PLAINTIFF LEWIS:**  No, I was supposed to be going -- I

16   don't know when the next Tallahatchie run is, but they are

17   supposed to be taking me back to Tallahatchie.

18           **MR. COWAN:**  They are supposed to be taking you to

19   Tallahatchie?

20           **PLAINTIFF LEWIS:**  Yes, sir.

21           **MR. COWAN:**  I don't have any other questions, Your

22   Honor.

23           **THE COURT:**  Okay.  Thank you, Mr. Cowan.  I

24   appreciate it.  Again, Mr. Lewis, thank you for being

25   responsive to the questions that were asked of you.

1    Okay.  Let's talk about what is going to happen next.  The

2    Court is aware that we do have a pending motion from the

3    defendants that has been filed.  Mr. Lewis, have you received a

4    copy of the motion that was filed by the defense, a motion to

5    dismiss?  And it was filed on July 21st.  It's been filed for

6    some time.  Do you have a copy of that motion, sir?

7         **PLAINTIFF LEWIS:**  I got it in Tallahatchie.  They

8    don't let us bring papers from Tallahatchie to Raymond.

9         **THE COURT:**  Sure.  Do you have any intention of

10    responding to that motion?

11         **PLAINTIFF LEWIS:**  I didn't know I was supposed to.

12         **THE COURT:**  Yes, sir.  You have the right to respond

13    to the motion.  And if no response is filed, then the Court

14    will rule on what the defendants have filed.  So if you would

15    like to respond to the motion, the Court will give you an

16    additional 14 days to respond, so 14 days from today will be

17    the deadline for you to file a response to that motion.  Okay?

18         **PLAINTIFF LEWIS:**  All right.

19         **THE COURT:**  Now, next let's talk about documents.

20    Mr. Cowan, did you bring documents for Mr. Lewis today?

21         **MR. COWAN:**  Yes, Your Honor.  So we've got here his

22    jail file.  We've got an investigative file from the incident

23    at issue.  We've got his grievance filed, and we've got his

24    medical records from the detention center.  So they are Bates

25    stamped Jones 1 through 458.  And we've got a, consistent with

1    the Court's omnibus order, a preliminary witness list and

2    exhibit list.

3            **THE COURT:**  That was going to be my next question.

4    Thank you, Mr. Cowan.  The record will reflect that you are

5    providing Mr. Lewis with a copy of the documents that you

6    referenced, as well as with an exhibit and witness list.

7        Now, Mr. Lewis, have you prepared your witness and exhibit

8    lists in this case?

9        A witness list is a list of the folks that you would call

10   to testify in your case if your case were to go to trial.  And

11   the exhibit list is a list of any documents that you would plan

12   to use if your case would go to trial.  So in our order, we

13   asked you to bring those documents with you today.  Have you

14   prepared those as of this time?

15           **PLAINTIFF LEWIS:**  No, ma'am.

16           **THE COURT:**  Okay.  So we will give you 14 days for

17   that as well.  You have three deadlines.  You have your

18   response to the motion that is pending.  You've got to provide

19   your witness list, and you've got to provide your exhibit list.

20   I'm going to give you 14 days to do those three things.  Do you

21   understand?

22           **PLAINTIFF LEWIS:**  Yes, ma'am.

23           **THE COURT:**  All right.  I am going to hold off on

24   entering -- thank you, Mr. Cowan, I appreciate it.  I'm going

25   to hold off on entering a scheduling order in the case pending

1    disposition of the motion that was filed by the defense.  Mr.

2    Cowan, do you anticipate or would you like to supplement your

3    motion based on testimony here today?

4         **MR. COWAN:**  It's possible, Your Honor.  So what I --

5    you knew just what I was thinking.

6         **THE COURT:**  I gave you some more time for the

7    exhaustion.

8         **MR. COWAN:**  You did, and that's due on the 29th.  I

9    might suggest that if we need to supplement our motion, we

10   would do so by that same deadline.

11        **THE COURT:**  All right.  I was asking you that because

12   I may need to hold Mr. Lewis's response deadline in abeyance

13   until that supplementation is done.  So, Mr. Lewis, correction

14   to what I just said.  So you are still going to have 14 days to

15   do the witness and exhibit lists, and then we will give you a

16   new deadline for doing your response based on when the

17   defendants file their supplement to their motion.

18       So you've got to keep checking.  We send you mail, so

19   you've got to keep checking your mail so you know what is going

20   on with your case and you are aware of the deadlines that are

21   occurring in your case.  Okay, sir?

22        **PLAINTIFF LEWIS:**  Yes, ma'am.

23        **THE COURT:**  All right.  I think that's all that I

24   have.  Like I said, we are going to hold the formal omnibus

25   scheduling order in abeyance until motion practice on this

1    issue is complete.  Mr. Cowan, do you have anything further

2    from the defense?

3                    **MR. COWAN:**  Nothing further, Your Honor.

4                    **THE COURT:**  Okay.  All right.  Mr. Lewis, is there

5    anything else for you today, sir?

6                    **PLAINTIFF LEWIS:**  No, ma'am.

7                    **THE COURT:**  So thank you, I appreciate it, and we are

8    going to adjourn your hearing.  And you all are free to return.

9    Thank you so much for being here as well.

10        We stand adjourned in Lewis versus Tyree Jones.

11                              (HEARING CONCLUDED)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF COURT REPORTER

        I, Teri B. Norton, RMR, FCRR, RDR, Official Court

Reporter for the United States District Court for the Southern

District of Mississippi, appointed pursuant to the provisions

of Title 28, United States Code, Section 753, do hereby certify

that the foregoing is a correct transcript of the proceedings

reported by me using the stenotype reporting method in

conjunction with computer-aided transcription, and that same is

a true and correct transcript to the best of my ability and

understanding.

        I further certify that the transcript fees and format

comply with those prescribed by the Court and the Judicial

Conference of the United States.




        S/ *Teri B. Norton*
        TERI B. NORTON, RMR, FCRR, RDR
        OFFICIAL COURT REPORTER